| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | |
| **Plaintiff:**<br>FIRST MEZZANINE INVESTORS, LLC, a Nebraska limited liability company, for itself and derivatively on behalf of BMGI CORPORATION, a Delaware corporation,<br>v.<br>**Defendants:**<br>BMGI CORPORATION, a Delaware corporation, BREAKTHROUGH ENTERPRISES, LLC, a Colorado limited liability company, BREAKTHROUGH MANAGEMENT GROUP HOLLAND, LLC, a Colorado limited liability company, and BREAKTHROUGH MANAGEMENT GROUP CANADA, LLC, a Colorado limited liability company, DSI INVESTMENTS, LLC, a Colorado limited liability company, and DAVID SILVERSTEIN, an individual resident of Colorado. | ▲ **COURT USE ONLY** ▲<br><br>Civil Action No.:<br>Division: |
| *Attorneys for Plaintiff First Mezzanine Investors, LLC:*<br>Darrell G. Waas, #10003<br>Patricia C. Campbell, #24495<br>WAAS CAMPBELL RIVERA JOHNSON & VELASQUEZ LLP<br>1350 17th Street, Suite 450<br>Denver, CO 80202<br>Telephone:  (720) 351-4700<br>Facsimile:  (720) 351-4745<br>waas@wcrlegal.com<br>campbell@wcrlegal.com<br><br>Robert J. Bothe, NE #15018<br>Robert P. Diederich, NE #23393<br>MCGRATH NORTH MULLIN & KRATZ, PC LLO<br>Suite 3700 First National Tower<br>1601 Dodge Street<br>Omaha, Nebraska 68102<br>Telephone:  (402) 341-3070<br>Facsimile:  (402) 341-0216<br>rbothe@mcgrathnorth.com<br>rdiederich@mcgrathnorth.com | |

## VERIFIED COMPLAINT FOR APPOINTMENT OF RECEIVER

COMES NOW First Mezzanine Investors, LLC ("FMI") and for its cause of action against BMGI Corporation, Breakthrough Enterprises, LLC, Breakthrough Management Group Holland, LLC, Breakthrough Management Group Canada, LLC, DSI Investments, LLC and David Silverstein (collectively the "Defendants"), states and alleges as follows:

## THE PARTIES

1. FMI is a limited liability company organized and existing under the laws of the State of Nebraska with its principal place of business in Omaha, Douglas County, Nebraska. FMI was formerly known as First Capital Partners, LLC ("FCP"). In 2011, FCP changed its name to First Mezzanine Investors, LLC. FCP and FMI are hereinafter used interchangeably.

2. BMGI Corporation is a Delaware corporation ("BMGI") with its principal place of business in Denver, Colorado.

3. Breakthrough Enterprises, LLC is a Colorado limited liability company ("BE") with its principal place of business in Denver, Colorado.

4. Breakthrough Management Group Holland, LLC is a Colorado limited liability company ("BH") with its principal place of business in Denver, Colorado.

5. Breakthrough Management Group Canada, LLC is a Colorado limited liability company ("BC") with its principal place of business in Denver, Colorado.

6. DSI Investments, LLC, is a Colorado limited liability company ("DSI") with its principal place of business in Denver, Colorado.

7. David Silverstein ("Silverstein") is a Colorado resident with his residence at 1445 Onyx Circle, Longmont, Colorado.

8. On information and belief, FMI alleges Silverstein owns and controls, directly or indirectly, BMGI, BE, BH, BC and DSI.

9. Venue is proper under C.R.C.P. because the principal place of business of the entity Defendants is the City and County of Denver.

## BACKGROUND

A. **The DSI Loan**

10. On or about October 3, 2009, DSI, as lender, entered into a Loan Agreement with BMGI (the "DSI Loan Agreement") wherein DSI agreed to loan BMGI up to $2,000,000.00. A true and correct copy of the DSI Loan Agreement is attached hereto as **Exhibit A**.

11.     In connection with the DSI Loan Agreement, on or about October 3, 2009, BMGI executed its Senior Promissory Note in favor of DSI in the principal amount of $2,000,000.00 (the "DSI Note").  A true and correct copy of the DSI Note is attached hereto as **Exhibit B**.

12.     On information and belief, DSI has a security interest in certain of BMGI's property.

**B.      The FCP Loans**

13.     On or about October 3, 2009, FCP and BMGI, among others, entered into a Loan Agreement wherein FCP agreed to loan BMGI up to $4,500,000.00 (as amended, the "FCP Loan Agreement").  A true and correct copy of the FCP Loan Agreement and the amendments thereto are attached hereto as **Exhibit C**.

14.     In connection with the FCP Loan Agreement, BMGI, among others, executed an Amended and Restated Senior Subordinated Promissory Note (as amended, the "FCP Promissory Note") in the principal amount of $4,500,000.00.  A true and correct copy of the FCP Promissory Note and the amendments thereto are attached hereto as **Exhibit D**.

15.     On or about October 3, 2009, BMGI executed a Security Agreement (the "FCP Security Agreement") in favor of FCP, securing the obligations owed by BMGI to FCP under the FCP Loan Agreement and the FCP Promissory Note.  A true and correct copy of the FCP Security Agreement is attached hereto as **Exhibit E**.

16.     Pursuant to the FCP Security Agreement, BMGI granted FCP a security interest in the following collateral owned by BMGI, generally described as all:

- Inventory.
- Accounts and Other Rights to Payments.
- Instruments, Documents and Chattel Paper.
- General Intangibles.
- Equipment.
- Specific Property.

17.     FCP filed a UCC-1 Financing Statement against BMGI with the Delaware Secretary of State on October 5, 2009 and FMI filed a Continuation Statement on September 2, 2014.  True and correct copies of the Financing Statement and Continuation Statement are attached hereto collectively as **Exhibit F**.

18.     On or about October 3, 2009, BE, BH and BC (herein collectively referred to as ("Guarantors") executed their Secured Guaranty Agreement (the "Secured Guaranty Agreement") in favor of FCP guarantying the obligations of BMGI under the FCP Loan Agreement and the FCP Secured Promissory Note.  A true and correct copy of the Secured Guaranty Agreement is attached hereto as **Exhibit G**.

19.     On or about October 3, 2009, each of the Guarantors executed a Security Agreement (the "Guarantors Security Agreement(s)") in favor of FCP. True and correct copies of each of the Guarantors Security Agreements are attached hereto as **Exhibit H**, **Exhibit I** and **Exhibit J**.

20.     Pursuant to each Guarantors Security Agreement, each Guarantor granted FCP a security interest in the following collateral owned by the Guarantors generally described as all:

- Inventory.
- Accounts and Other Rights to Payments.
- Instruments, Documents and Chattel Paper.
- General Intangibles.
- Equipment.
- Specific Property.

21.     FCP filed UCC-1 Financing Statements against the Guarantors with the Colorado Secretary of State on October 5, 2009, and FMI filed Continuation Statements on September 2, 2014 for each Financing Statement. Copies of the Financing Statements and Continuation Statements are attached hereto collectively as **Exhibit K**, **Exhibit L** and **Exhibit M** (separated by each Guarantor).

C.     **The Intercreditor Agreement**

22.     On or about October 3, 2009 FCP, BMGI, BE, BH and BC, among others, and DSI entered into an Intercreditor Agreement, a true and correct copy of which is attached hereto as **Exhibit N**.

23.     Pursuant to the Intercreditor Agreement, the debt owing to FMI by BMGI and the Guarantors is subordinated to the debt owing to DSI by BMGI.

24.     Pursuant to the Intercreditor Agreement, FMI's security interest in BMGI's property is subordinate to any security interest DSI has in the same property of BMGI. FMI's security interest in the Guarantors' property is superior to any security interest DSI may claim in the same property.

D.     **The Defaults**

25.     On information and belief, BMGI defaulted in its obligations to DSI under the DSI Loan Agreement and the DSI Note by failing to pay interest due and payable to DSI on June 30, 2016.

26.     On information and belief, FMI alleges the principal balance due DSI under the DSI Loan Agreement and DSI Note from BMGI does not exceed $1,035,000.00 and DSI is owed simple interest thereon at the rate of 6% per annum from and after April 1, 2016.

27. BMGI and the Guarantors defaulted in their obligations to FMI under the FCP Loan Agreement and the FCP Promissory Note in their failure to make the principal payments due May 31, 2016, June 30, 2016 and July 31, 2016, each payment in the amount of $25,000.00, and their failure to make the interest payment due June 30, 2016 in the amount of $105,252.61.

28. There is now due and owing FMI by BMGI and the Guarantors, and each of them, the principal balance of $3,469,889.16, accrued interest through August 26, 2016 of $170,023.88 and accruing interest at the rate of $1,156.63 per diem.

### REQUEST FOR THE APPOINTMENT OF A RECEIVER

29. The allegations above are hereby incorporated.

30. On September 1, 2016 BMGI filed a certificate of dissolution with the Delaware Secretary of State. A true and current copy of which is attached hereto as **Exhibit O**.

31. On July 19, 2016, BMGI notified FMI by email that "[t]here is nothing here that gives us sufficient basis to respond [to FMI's proposal] with any kind of counter proposal. The business would not survive and the effort would be futile. Today we're sending a retainer to BMGI's attorneys in Philadelphia with instructions to prepare a Chapter 7 bankruptcy dated Monday, August 1st." A true and correct copy of the email is attached hereto as **Exhibit P**.

32. On August 8, 2016, DSI sent BMGI, BE, BH, and BC a Notice of Default and Notice of Intent to Take Possession of Property and/or Collateral, a copy of which is attached as **Exhibit Q**.

33. On August 10, 2016, FMI sent its Notice of Default and Demand for Payment to BMGI to the attention of Silverstein. A true and correct copy of the Notice of Default is attached hereto as **Exhibit R**.

34. Notwithstanding DSI's Notice of August 8, 2016, as of August 15, 2016 DSI still had not foreclosed its collateral. DSI stated the reason for not foreclosing was that BMGI had not yet run out of cash and continued to run on margin. Continuing to delay foreclosure allows BMGI to deplete cash and receivables that are or would be available to satisfy BMGI and the Guarantors' debt to FMI.

35. On August 15, 2016, BMGI sent FMI the financial statements attached hereto as **Exhibit S**. The financial statements show that as of June 30, 2016, BMGI had accounts receivable of $1,447,996.00, cash of $565,030.00, PP&E net of depreciation of $107,321.00, and intangible assets of $99,564.00, all collateral of FMI's. In addition, the financial statements, show that as of June 30, 2016, BMGI was insolvent with total assets of $4,450,186.00 and total liabilities of $6,455,959. Finally, the financial statements list a debt owing to FCP in the amount of $3,469,890. On information and belief, FMI alleges as of June 30, 2016, the Guarantors had accounts receivable stated in U.S. dollars of approximately $400,000.00, all collateral of FMI.

36. On August 19, 2016, Silverstein notified FMI by email:

- Today's cash balance is in the neighborhood of $20,000.

- I am unsure of the precise receivables balance because this week's work has yet to be invoiced, but I expect it to be relatively unchanged.

- Clearly I am in a much better position than you to do so and do not recognize FCP's right to interfere, DSI is foreclosing and taking possession of the assets today. Cash will be applied to DSI, receivables will be collected over the next 90-days and any surplus in excess of what DSI is owed will be applied to the FCP note. The balance of the assets will be put up for sale and once DSI has been satisfied, any surplus will be delivered to FCP.

37. On or about August 22, 2016, FMI received from DSI a Notification of Disposition Collateral, a true and correct copy of which is attached hereto as **Exhibit T**.

38. On or about August 22, 2016, FMI received an email from Silverstein, a copy of which is attached hereto as **Exhibit U**, in which Silverstein stated in part:

> "Effective today, DSI has foreclosed and taken possession of all assets of BMGI Corp. There will be a normal and customary wind down of the operations of BMGI, to include but not necessarily be limited to the following:
>
> - Issuance of final invoices for work performed last week
>
> - A final closing of the accounting records
>
> - A closeout tax return
>
> - Ensuring employees receive their final paychecks
>
> - Ensuring the transition of employee 401K plans, their entitlement to COBRA benefits, and other such responsibilities to employees.
>
> - Maintaining BMGI's email and accounting systems to facilitate collections and the wind-down process.

> The accounts receivable will be collected. I anticipate close to (if not achieving) 100% collection. Currently, there is a small remaining cash balance that will remain in the company for the purpose of covering wind-down expenses (above) and tax liabilities. Based on estimates of expenses, some collected receivables will also remain in the company to ensure adequate reserves for expenses. Any remaining cash balance at the end of the wind-down process will be added to the amounts recovered."

In such email, Silverstein reveals his inherent conflict of interest as being the owner of both the foreclosing secured creditor (DSI) and the debtor whose property is being foreclosed (BMGI). In the first instance, Silverstein states that DSI has foreclosed and taken possession of all assets of BMGI. Next, though, Silverstein states that DSI will wind-down BMGI and more importantly, that DSI will use the cash collateral to pay unsecured expenses and tax liabilities of BMGI and will ensure that certain of the cash collateral is kept as an adequate reserve for BMGI's wind-down expenses. In stating as much, Silverstein admits that DSI, as foreclosing creditor, intends to wind down the debtor (BMGI) and intends to use FMI's collateral to pay for such expenses, all for the benefit of Silverstein, DSI and BMGI.

39. Silverstein's August 22 email, **Exhibit U**, goes on to state:

> "The other assets of the business will be put up for private sale to be conducted by a qualified trustee. They will be given at least 30-days to identify buyers and then will be allocated more time to accept bids and close deals to the extent viable buyers are identified."

Nothing in the Colorado Uniform Commercial Code provides for such a procedure and again, Silverstein's proposed actions shift all costs and expenses to FMI.

40. In addition, Silverstein's August 22 email, **Exhibit U**, states:

> "BMGI's accounts receivable balance on Friday, August 19th was $933,523.16. To be added to this balance are the invoices for work performed last week which have not yet been generated (I estimate approximately $150K)."

From June 30, 2016 to approximately August 22, 2016, BMGI's receivables has declined by approximately $564,735.00 and cash has declined by approximately $565,016.00, for a total of $1,129,751.00 with no explanation other than the loss of BMGI's largest client, the typically slow summer period, and lack of new business.

41. On or about August 29, 2016 two collateral auditors from FMI were at the Defendants' offices for a collateral inspection. Notwithstanding their written request to the

Defendants on August 25, 2016 and notwithstanding § 7.5 of the FCP Loan Agreement, BMGI and the Guarantors "shall permit access by [FMI] to its books and records during normal business hours and permit [FMI] to make copies of such books and records upon reasonable notice." BMGI, the Guarantors, and Silverstein denied FMI's auditors access to detailed accounts receivable and accounts payable reports.

42. Finally, in an email sent by Silverstein to FMI on August 23, 2016, a copy of which is attached hereto as **Exhibit V**, Silverstein states:

> "[T]his week is full of chaos with panic calls (mostly from contractors), figuring out which people can talk to clients about doing work for themselves and which I want to manage the communication with . . . ."

Silverstein's email suggests that he's diverting business away from BMGI and to his current or former employees who can potentially do work for BMGI's clients as separate entities or independent contractors.

43. On September 2, 2016 FMI was informed that on September 1, 2016 BMGI filed for dissolution in Delaware. A true and correct copy of the email so informing FMI is attached hereto as **Exhibit W**.

44. On information and belief, and FMI therefore alleges no proceeding for judicial dissolution has been filed by BMGI.

45. In sum, BMGI and the Guarantors are insolvent and have either ceased their operations or are in the process of doing so, and its assets are in danger of being lost, materially injured or impaired and DSI and/or Silverstein are facilitating the dissipation of FMBI and the Guarantors' assets – which are subject to FMI's security interest – to the harm and detriment of FMI. Cause exists for the appointment of a receiver. Plaintiff is a creditor of each of the entities for which a receiver is sought and said entities have issued financial statements or other writings that said claims are due and owing.

## FIRST CLAIM FOR RELIEF – APPOINTMENT OF RECEIVER

46. The allegations above are hereby incorporated.

47. BMGI is a Delaware corporation with its principal place of business in Colorado. On September 1, 2016 BMGI filed a certificate of dissolution with the Secretary of State of Delaware, **Exhibit O** hereto. 8 Del. C. § 279 provides in part as follows:

> Trustees or receivers for dissolved corporations; appointment; powers; duties.
>
> When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on

>application of any creditor… corporation… at any time, may either appoint… 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.

This Court may apply Delaware law because BMGI is a Delaware corporation and appoint a receiver pursuant to the above statute.

48. For the reasons set forth above, Plaintiff is entitled to the appointment of a receiver for the entities identified in the prayer for relief below.

**SECOND CLAIM FOR RELIEF – VIOLATION OF U.C.C. § 9-608 AGAINST DSI**

49. The allegations above are hereby incorporated.

50. DSI, as secured creditor, no later than August 22, 2016, took possession of all assets of BMGI and remains in possession of their assets. DSI has used the cash collateral it has taken possession of to pay unsecured expenses of BMGI instead of and to the detriment of FMI, which is a direct violation of Colo. U.C.C. § 9-608.

51. Pursuant to Colo. U.C.C. § 9-625(b), DSI is liable for damages in the amount of any loss caused by a failure to comply with Article 9 of the Colo. U.C.C.

52. For the reasons set forth above, Plaintiff is entitled to damages against DSI in an amount no less than the amount DSI has paid to third parties with cash collateral.

**THIRD CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTIES AGAINST SILVERSTEIN (BROUGHT DERIVATIVELY ON BEHALF OF BMGI)**

53. The allegations above are hereby incorporated.

54. On information and belief, Silverstein owns and controls, directly or indirectly, BMGI.

55. Based on financial statements delivered by BMGI to FMI, as of June 30, 2016, BMGI was insolvent with total assets of $4,450,186.00 and total liabilities of $6,455,959.

56. Despite such insolvency, Silverstein continued to bleed the cash out of BMGI to pay unsecured creditors junior to FMI, which either reduces Silverstein's personal liability exposure or benefits Silverstein in future business opportunities. Further, Silverstein's payment of unsecured debts over the secured claim of FMI violates the priority rule afforded secured creditors and ensured that the entities' remaining assets remained subject to FMI's liens.

57. In addition, BMGI North America's financial statements, as disclosed to FMI's auditors, reveal $600,803.91 in disbursements for "Inter-Company Transfers" from July 1, 2016 through August 19, 2016. Silverstein is dissipating the assets of BMGI and transferring them to his related entities, all to the detriment of BMGI's creditors, including FMI.

58. BMGI North America's financial statements, as disclosed to FMI's auditors, also reveal $227,358.61 in disbursements for "Travel/Expense Reimbursement" from July 1, 2016 through August 19, 2016. Despite BMGI's insolvency and Silverstein's acknowledgment on July 19, 2016, Silverstein continued to bleed the cash out of BMGI for his own personal benefit.

59. For the reasons set forth above, Silverstein has breached his fiduciary duties owed to BMGI. FMI brings this action against Silverstein on behalf of BMGI.

**FOURTH CLAIM FOR RELIEF – JUDICIAL DISSOLUTION**

60. The allegations above are hereby incorporated.

61. As previously set forth, BMGI, BE, BH, and BC are insolvent and have admitted that FMI's claim is due and owing.

62. For the reasons set forth above, BMGI, BE, BH and BC, and notwithstanding BMGI's filing for dissolution in Delaware be judicially dissolved by this Court should be judicially dissolved.

WHEREFORE, First Mezzanine Investors, LLC prays for (i) the appointment of a receiver pursuant to C.R.C.P. 66 over the assets and affairs of BMGI Corporation, Breakthrough Enterprises, LLC, Breakthrough Management Group Holland, LLC, and Breakthrough Management Group Canada, LLC, (ii) a judgment against DSI for the losses suffered by FMI as a result of DSI's breach of Colo. U.C.C. § 9-608, (iii) a judgment against David Silverstein for breach of fiduciary duties, brought derivatively on behalf of BMGI, (iv) for an order for judicial dissolution of said entities pursuant to Delaware law and C.R.S. 7-80-810 *et. seq.* and (v) a preliminary injunction enjoining BMGI Corporation, Breakthrough Enterprises, LLC, Breakthrough Management Group Holland, LLC, Breakthrough Management Group Canada, LLC, and DSI Investments, LLC from disposing, directly or indirectly, any assets of BMGI Corporation, Breakthrough Enterprises, LLC, Breakthrough Management Group Holland, LLC, and Breakthrough Management Group Canada, LLC.

Dated this 2nd day of September, 2016.

                WAAS CAMPBELL RIVERA JOHNSON & VELASQUEZ LLP

                By:  */s/ Darrell G. Waas*
                    Darrell G. Waas
                    Patricia C. Campbell

*Attorneys for Plaintiff First Mezzanine Investors, LLC*

*Of Counsel*

Robert J. Bothe
Robert P. Diederich
MCGRATH NORTH MULLIN & KRATZ, PC LLO
Suite 3700 First National Tower
1601 Dodge Street
Omaha, Nebraska 68102

rbothe@mcgrathnorth.com
rdiederrich@mcgrathnorth.com

*Attorneys for Plaintiff First Mezzanine Investors, LLC*

Plaintiff's Address:

1620 Dodge Street, Stop 1104
Omaha, NE 68197

{00032595 / 1}          11

## VERIFICATION

The undersigned certifies that the foregoing **VERIFIED COMPLAINT FOR APPOINTMENT OF RECEIVER** is true and correct to the best of his knowledge, information and belief.

By: First National Investment Banking, Inc., as Managing Member of First Mezzanine Investors, LLC

By: *[signature]*
Name: Stephen C. Wade
Title: President and Chairman


STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )

The foregoing instrument was acknowledged before me this 2 day of September, 2016, by Stephen C. Wade, as an individual.

Witness my hand and official seal.

My commission expires: August 4, 2019

GENERAL NOTARY - State of Nebraska
NANCY R. TARGY
My Comm. Exp. August 4, 2019

*[signature]*
Notary Public


*In accordance with C.R.C.P. 121 §1-26(9), a printed copy of this document with original signature(s) is maintained by Waas Campbell Rivera Johnson & Velasquez LLP, and will be made available for inspection by other parties or the Court upon request.*

{00032568 / 1}                           12